IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| v. | NO. 17-369 |
| JEFFREY REED, | |
| *Defendant.* | |

**PAPPERT, J.** April 2, 2020

## MEMORANDUM

On July 12, 2017, the government filed an Information against Jeffrey Reed charging him with one count of wire fraud and aiding and abetting in violation of 18 U.S.C. §§ 1343 and 2. (ECF No. 1.) Reed pled guilty to both charges on November 28, 2017. *See* (Guilty Plea Agreement, ECF No. 16; Change of Plea Hr'g Tr., ECF No. 14). The Court sentenced him to a year and one day of imprisonment, three years of supervised release, a $100 special assessment, and $250,000 in restitution. *See* (Judgment, ECF No. 33).

Reed did not appeal his sentence. He instead filed a *pro se* Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 40.) In his Motion, Reed presents five arguments. *See* (Mot., ECF No. 40). He raises two ineffective assistance of counsel claims based on his attorney failing to object to alleged inaccuracies in the Information and leaving out "significant items" in his sentencing memorandum. (*Id.* at 4 & 7.) In his remaining three arguments, Reed contends the Court sentenced him "based upon materially incomplete information," including

"inaccurate representations" in the government's sentencing memorandum and "materially inaccurate and incomplete" information in the presentence investigation report. *See* (*id.* at 4–8).

It is unclear what relief, if any, Reed seeks. He does "not wish to collaterally attack the governments [sic] case," but rather seeks to provide the Court and the U.S. Attorney's Office with "mitigating circumstances and additional information" to understand the full scope of "what happened in this case." (*Id.* at 5.) Reed also asks for the "opportunity to amend" the information presented to the Court for sentencing. (*Id.* at 8.) Construed liberally, the Court interprets Reed's Motion as one seeking to correct his sentence. For the reasons outlined below, the Court denies the Motion.

I

28 U.S.C. § 2255 permits a prisoner in custody sentenced by a federal court to move that court to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[1] *See* 28 U.S.C. § 2255(a). The petitioner bears the burden of proving that his § 2255 motion has merit. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Further, a petitioner "must clear a significantly higher hurdle than would exist on

---

[1] Reed filed his Motion on November 5, 2019, just over a month after he was released from prison on October 4. *Jeffrey Reed*, FED. BUREAU OF PRISONS: FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited Apr. 2, 2020). Because Reed filed his Motion during his three-year period of supervised release, he is still considered "a prisoner in custody" within the meaning of § 2255. *United States v. Essig*, 10 F.3d 968, 970 n.3 (3d Cir. 1993) (citing *Maleng v. Cook*, 490 U.S. 488, 491 (1989)).

2

direct appeal" to obtain relief. *See United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

The district court is given discretion in determining whether to hold an evidentiary hearing on a petitioner's motion under § 2255. *See Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). A district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *United States v. Day*, 969 F.2d 39, 41–42 (3d Cir. 1992)). That is the case here.

II

Reed's Guilty Plea Agreement and his representations to the Court at his change of plea hearing foreclose whatever collateral "relief" he may seek based on his arguments that the Court relied on inaccurate and materially incomplete documentation to sentence him. Criminal defendants "may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008), *abrogated on other grounds by Garza v. Idaho*, 139 S. Ct. 738 (2019). When a criminal defendant waives collateral challenge rights, the Court must evaluate the validity of the waiver by examining two factors: (1) whether the waiver was knowing and voluntary; and (2) whether enforcing the waiver "would work a miscarriage of justice." *Id.* at 237.

A

In determining whether a waiver is knowing and voluntary, the Court "must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the terms of any provision in a plea agreement waiving the right to appeal or collaterally attack the sentence." *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) (citing Fed. R. Crim. P. 11(c)(6)). The Court did just that.

In his Guilty Plea Agreement, Reed agreed that, "[i]n exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law," subject to certain exceptions, all of which (excluding the ineffective assistance of counsel claims addressed *infra* in Section III) do not apply. (Guilty Plea Agreement ¶ 10, ECF No. 16.) Reed signed the Guilty Plea Agreement, acknowledging that he was waiving his right to appeal by pleading guilty. *See* (Guilty Plea Agreement, Acknowledgement of Rights, ¶ 6.)

Reed also benefitted from the Guilty Plea Agreement. The government represents that it agreed to charge Reed for only one count of wire fraud, which was just "a fraction of the wire fraud scheme." (Gov't Mot. 9, ECF No. 43.) The Guilty Plea Agreement also provided that if the government determined that Reed had fulfilled his obligations of cooperation, it would inform the Court of his cooperation and move for a

4

downward departure from the sentencing guidelines pursuant to U.S.S.G. § 5K.1. (Guilty Plea Agreement ¶ 3.)

At his change of plea hearing, Reed confirmed that before signing the Guilty Plea Agreement and Acknowledgment of Rights, he read both documents, discussed them with his counsel, and understood their contents. *See* (Change of Plea Hr'g Tr. 16:5–18:15). He also acknowledged that he understood the Guilty Plea Agreement to contain a waiver of his appellate rights. *See* (*id.* at 15:7–25). During the colloquy, the Court specifically reviewed Reed's limited right to appeal or collaterally attack his conviction or sentence, which Reed again confirmed that he understood. (*Id.* at 22:15–24.) Before accepting his plea, the Court assured itself that Reed had not been threatened or coerced into accepting the Agreement and that he had not received promises or assurances inducing him to plead guilty. (*Id.* at 18:24–19:1; 36:1–6.) Reed's guilty plea—including his waiver of the right to collaterally challenge his sentence—was knowingly, voluntarily, and intelligently made.

B

The Court must next consider whether enforcing this waiver would work a "miscarriage of justice." *Mabry*, 536 F.3d at 239. Courts should apply the miscarriage of justice exception to a collateral attack waiver "sparingly and without undue generosity." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (quoting *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)). Nevertheless, the Court has an affirmative duty to examine the issue. *Mabry*, 536 F.3d at 237.

To determine whether enforcement would create a miscarriage of justice, courts should consider "the clarity of the error, its gravity, its character (e.g., whether it

concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." *Id.* at 242–43 (quoting *Teeter*, 257 F.3d at 25–26). The Third Circuit Court of Appeals has recognized the miscarriage of justice exception in a few limited circumstances, such as where constitutionally deficient lawyering prevented the defendant from understanding his plea, where a defendant should have been permitted to withdraw a guilty plea or where the waiver itself was the product of ineffective assistance of counsel. *United States v. Spivey*, 182 F. Supp. 3d 277, 280 (E.D. Pa. 2016) (citing *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007); *Wilson*, 429 F.3d at 458).

Pursuant to the terms of his Guilty Plea Agreement, Reed is not precluded from collaterally attacking his sentence on a claim of ineffective assistance of counsel, discussed *infra* in Section III. He did, however, waive his right to bring other claims. Reed's request for "the opportunity to amend" documents reviewed by the Court for his sentencing does not fall within the "limited circumstances" recognized by the Third Circuit. Enforcing Reed's agreed upon waiver will not work a miscarriage of justice.[2] *See Khattak*, 273 F.3d at 563.

---

[2] To the extent that Reed argues there were errors in the Information, he made "one correction" during the Guilty Plea Hearing by informing the Court that he "didn't operate the business with [Mr. Sealy and Mr. Enge], they operated the business and [he] assisted them." (Change of Plea Hr'g Tr. 9:22–24.) When later asked by the Court if the government correctly and accurately summarized the facts of his case, Reed initially responded, "I cannot totally agree to that, unfortunately." (*Id.* at 31:2–5.) Reed went on to explain that he "was fully unaware of the transmission of any funds" from a specific investor who was defrauded. (*Id.* at 31:7–16.) He agreed, however, that he "engaged in activities prior to the transmission and was instrumental in causing [the investor] to submit those monies." (*Id.* at 32:4–10.) With that correction on the record, Reed fully admitted to the factual basis of the charges against him. (*Id.* at 32:17–18.)

6

III

Again, Reed did not waive his right to assert his ineffective assistance of counsel claims, but those claims are time-barred. *See* (Guilty Plea Agreement ¶ 10(b)(4)). A § 2255 motion is subject to a one-year statute of limitations. *See* 28 U.S.C. § 2255(f). The limitations period runs from the latest of the following: (1) the date on which the judgment becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of diligence. *Id*.

The Court signed the Judgment in a Criminal Case on October 16, 2018, which the Clerk entered on October 17, 2018. (ECF No. 33.) Reed then had fourteen days to file an appeal. *See* Fed. R. App. P. 4(b)(1). He did not do so, and his conviction became final on October 31, 2018. Applying the one-year limitations period to that date, Reed had until October 31, 2019 to timely file his Motion.[3] Reed's Motion is postmarked October 31, 2019, but the Clerk did not receive it until November 5, 2019. *See* (ECF No. 40-1).

---

[3] If a defendant does not pursue a timely direct appeal, his conviction and sentence become final for purposes of a § 2255 motion on the date that the time for filing such an appeal expired. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).

7

Under the prison mailbox rule, "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing." *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998). This rule was created because "*pro se* prisoners have no control over delays between the prison authorities' receipt of the notice and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally." *Houston v. Lack*, 487 U.S. 266, 273–74 (1988). In this case, however, Reed was released from prison on October 4, 2019, such that he "was not restricted by the same lack of control as pro se prisoners" when he mailed his Motion. *Dwyer v. United States*, 2014 WL 2587499, at *3 (D.N.J. June 9, 2014). Because Reed was not incarcerated at the time he mailed his Motion, the prison mailbox rule does not apply and his Motion is deemed filed on November 5, 2019—*i.e.*, the date the Clerk received it. His Motion is accordingly untimely.[4]

Even if the Motion was timely, Reed's ineffective assistance of counsel claims lack merit. He baldly asserts that his counsel was ineffective (1) by failing to object to and correct alleged inaccuracies in the Information and (2) by submitting an inadequate one-page sentencing memorandum. *See* (Mot. 4 & 7).

To establish an ineffective assistance of counsel claim, Reed must satisfy the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). He

---

[4] Section 2255's statute of limitations is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010). Equitable tolling is a remedy that should be invoked "only sparingly." *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998). "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Reed does not argue that equitable tolling should apply but explains that he did not file an appeal or any other action "until the present date for various reasons, mental emotional and financial." (Mot. 4.) Reed has not any alleged facts, however, to show that his circumstances present any unusual or extraordinary circumstances to justify equitable tolling.

8

must show (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." *Id.* at 687–88, 694. When a petitioner challenges the validity of his guilty plea agreement on ineffectiveness grounds, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would instead have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A court may address either the deficiency or the prejudice prong first. *Strickland*, 466 U.S. at 670. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice . . . that course should be followed." *Id.*

Reed makes no showing that, but for counsel's alleged errors, there is a reasonable probability he would not have pleaded guilty or that the result of the sentencing would have been different. Rather, he merely suggests that correcting various filings would allow the Court to be "completely informed as to what happened." (Mot. 5.) Because Reed fails to show prejudice, his ineffectiveness claims lack merit.

IV

When a district court denies a § 2255 motion, a petitioner may only appeal if the district court grants a certificate of appealability. 28 U.S.C. § 2253. Because Reed has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not debate the dispositions of his claims, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.